```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────
LOYAL-T SYSTEMS LLC,
                    Plaintiff,             24-cv-07506 (JGK)

       - against -                         MEMORANDUM OPINION
                                           AND ORDER
AMERICAN EXPRESS COMPANY & AMERICAN
EXPRESS TRAVEL RELATED SERVICES
COMPANY, INC.,
                    Defendants.
─────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Loyal-T Systems LLC ("Loyal-T"), brings this action against the defendants, American Express Company ("Amex") and American Express Travel Related Services Company, Inc. ("Amex Travel").

In the First Amended Complaint ("FAC"), ECF No.58, Loyal-T seeks damages and injunctive relief for alleged patent infringement under 35 U.S.C. § 271. The plaintiff claims that the defendants' Plenti Program practiced without authorization the methods and technology claimed in United States Patent No. 8,712,839 (the "'839 Patent"), and that Amex's and Amex Travel's Membership Rewards Program infringes the '839 Patent and United States Patent No. 10,210,537 (the "'537 Patent").

Amex and Amex Travel now move to dismiss Loyal-T's patent infringement claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion to dismiss is **granted.**

## I. Factual Background

Unless otherwise noted, the following facts are taken from the First Amended Complaint and are accepted as true for purposes of the motion to dismiss.[1]

Loyal-T owns the '537 and '839 patents, both directed to systems and methods for administering customer loyalty programs. FAC ¶¶ 17-18, 21-22. As described in the FAC, "a customer loyalty program is a system whereby a business offers rewards to its customers who make frequent purchases." Id. ¶ 11. Traditionally, administering such programs required "specialized hardware to process the loyalty point clearing and settlement process." Id. ¶ 15. The '537 and '839 patents disclose an alternative process in which the loyalty program "piggy-back[s]" on an existing association network, thereby eliminating the need for separate hardware. Id. ¶ 27-28.

In simple terms, Loyal-T's patents enable a system in which a merchant identifies a customer through a point-of-sale ("POS") device and transmits the customer's ID (or "token") over the association network to the Program Manager's system. Id. ¶¶ 28-29. The Program Manager will then determine in a separate system whether the token may be used to provide loyalty program offers and rewards. Id. ¶¶ 29-30. After the Program Manager's

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

2

determination, the merchant receives a message via a communication network indicating the results. Id. ¶ 29.

Loyal-T alleges that the defendants introduced a multi-merchant loyalty program, also known as the Plenti Program, in 2015. Id. ¶¶ 13, 33. The Plenti Program allegedly "grants customers one point for every dollar spent at participating merchants." Id. ¶ 34. The defendants' customers allegedly may use these points "for redemption at any participating merchant within the Plenti Program network." Id.

Loyal-T alleges that the defendants terminated the Plenti Program but preserved the Plenti Program's capabilities in the Membership Rewards Program that uses "Pay with Points." Id. ¶¶ 41, 45. Both Amex and Amex Travel incorporate the Membership Rewards Program as part of their features. Id. ¶¶ 71, 87. In the Membership Rewards Program, the "Pay with Points" capability allegedly allows customers to use their earned points to pay a portion of their Amex bill, redeem for service or merchandise at a participating merchant, or redeem for travel through Amex Travel. Id. ¶ 47. Loyal-T alleges that participating merchants of Amex's Membership Rewards Program include Expedia, Rite Aid, Amazon.com, Best Buy, Dell Technologies, Staples, Saks Fifth Avenue, and Grubhub. Id. ¶¶ 52, 54-55.

Loyal-T alleges that the defendants' Plenti Program used the invention in the '839 patents without authorization, and

3

that the Membership Rewards Program similarly uses the invention in the '537 and '839 patents without authorization.[2] Id. ¶¶ 63-64. Specifically, the FAC asserts that (1) the Plenti Program infringed Claim 1 of the '839 patent[3] (Counts III and IV), and (2) the Membership Rewards Program infringes Claims 1 and 11 of the '537 patent[4] (Counts I and II) and Claim 1 of the '839 patent (Counts III and IV).

---

[2] Because the FAC does not distinguish between Amex's and Amex Travel's Membership Rewards Programs or between their respective Plenti Programs, each program is considered as one program for purpose of this Memorandum Opinion and Order. The plaintiff also represented in oral argument that there are separate counts alleged against Amex and Amex Travel merely because they are separate entities.

[3] The '839 patent specifies that "What is claimed is:
1. A method for providing a loyalty program comprising:
   registering a consumer with the loyalty program, said registration including obtaining personal information from the consumer and associating with the consumer a token to initiate a transaction request over an association network when used in conjunction with a merchant transaction system, wherein the token is associated with a form of tender;
   receiving by a processor the transaction request initiated by the token from the merchant transaction system, said transaction request, containing information sufficient to identify the token and a transaction, wherein the transaction request is transmitted over the association network;
   determining, by the processor, that **the token cannot be used as tender to pay for the transaction** and then determining whether the consumer is entitled to any rewards from the loyalty program in response to receiving the transaction request initiated by the token;
   transmitting by the processor, via the association network a message to the merchant transaction system, indicating any applicable rewards and indicating that **the token cannot be used as tender** in response to the receiving the transaction request initiated by the token;
   receiving, by the processor, from the merchant transaction system, additional details of the transaction stored at the merchant transaction system, during or after completion of the transaction tied to **the token that cannot be used as tender**, wherein the additional details of the transaction are transmitted over a communications network separate and distinct from the association network;
   matching, by the processor, the information in the transaction request to the additional details of the transaction;
   and
   transmitting any additional rewards to the consumer in response to the matching of the information in the transaction request to the additional details of the transaction." FAC, Ex. A, at 34 (emphasis added).

[4] The '537 patent specifies that "What is claimed is:

1. A computer implemented method for providing a loyalty program, comprising:
   scanning, using a card reader in a point-of-sale (POS) terminal of a merchant transaction system, a loyalty card having a token retained in the loyalty card, wherein the token allows a consumer to identify themselves using predefined elements;
   receiving, by the POS terminal, the token from the loyalty card, wherein **the loyalty card does not provide tender for payment for a corresponding transaction, and wherein the loyalty card is separate and apart from a payment card used to provide payment for the corresponding transaction**;
   transmitting, by the POS terminal, a transaction request message for the corresponding sales transaction;
   receiving, by a loyalty program processor, the transaction request message, the transaction request message initiated by the token from the merchant transaction system, wherein the transaction request message contains information sufficient to identify the token and the corresponding transaction, and wherein the transaction request message is transmitted over a credit card association network, wherein the token allows the consumer to identify themselves using the predefined elements recognized by the credit card association network;
   transmitting, by the loyalty program processor, a reward or other response message, to the POS terminal in response to receiving the transaction request message;
   scanning, using the card reader of the POS terminal, the payment card of the consumer to tender payment for the corresponding transaction;
   receiving, by the loyalty program processor, additional details of the corresponding transaction from the merchant transaction system and matching the additional details of the corresponding transaction with the transaction request message, the additional details received over a communication network separate and distinct from the credit card association network; and
   identifying, by the loyalty program processor, applicable rewards for the consumer based on the received additional details of the corresponding transaction from the merchant transaction system;
   validating, by the loyalty program processor, the applicable rewards for the consumer in response to receiving the additional details of the corresponding transaction, to confirm that the consumer is not given undeserved reward for a corresponding transaction not completed.
…
11. A computer implemented method for providing a loyalty program, comprising:
   receiving, by a point of sale (POS) terminal of a merchant transaction system, a token that allows a consumer to identify themselves using predefined elements, wherein the receipt of the token by the POS terminal is facilitated by physical scanning of a loyalty card;
   transmitting, by the POS terminal of the merchant transaction system, a transaction request message for a sales transaction, wherein the transaction request message is transmitted over a credit card association network;
   receiving, by a loyalty program processor, the corresponding transaction request message initiated by the token from the merchant transaction system, wherein the transaction request message contains information sufficient to identify the token and the corresponding transaction, and wherein **the token cannot be used as tender to pay for the corresponding transaction**;

5

In response, the defendants move to dismiss the FAC, contending that Loyal-T fails to allege plausibly that the Plenti Program and the Membership Rewards Program infringe Loyal-T's patents. See Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 62.

## II. Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself

---

transmitting, by the loyalty program processor, a reward or other response message, to the POS terminal in response to receiving the transaction request message;
scanning, using the card scanner of the POS terminal, a payment card of the consumer to tender payment for the corresponding transaction;
wherein the token is at least one of an ID number or a credit card number, permits a consumer to identify themselves using predefined elements recognized by the credit card association network;
receiving, by the loyalty program processor, additional details of the corresponding transaction and matching the additional details of the corresponding transaction with the corresponding transaction request message so as to identify applicable rewards for the consumer, the additional details received over a communication network separate and distinct from the credit card association network; and
validating, by the loyalty program processor, the applicable rewards for the consumer in response to receiving the additional details of the corresponding transaction, to confirm that the consumer is not given undeserved reward for a corresponding transaction not completed." FAC, Ex. B, at 46-47 (emphasis added).

6

is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the facts alleged in the light most favorable to the plaintiff, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Id. at 663.

Finally, when presented with a motion to dismiss a complaint, the Court may consider documents attached to or referenced in the complaint, documents that the plaintiff either possessed or knew about and relied on in bringing the lawsuit, or matters of which judicial notice may be taken. See Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).

### III. The Plenti Program

In Counts III and IV, Loyal-T pleads that the defendants' Plenti Program infringed Claim 1 of the '839 patent. FAC ¶¶ 102-133. However, Loyal-T fails to allege plausibly that the Plenti

Program infringed Claim 1 of the '839 patent, because the complaint merely parrots the language of thirteen of the claim's seventeen elements without alleging how the Plenti Program infringed those elements. Defs.' Mot. 15.

In a patent infringement case, a complaint must contain sufficient facts to provide the alleged infringer with "notice of what activity or device is being accused of infringement." K-Tech Telecomms., Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1284 (Fed. Cir. 2013). While a plaintiff need not prove its case at the pleading, "a plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352-53 (Fed. Cir. 2021). As the Court of Appeals for the Federal Circuit recently explained: "[d]irect infringement arises under 35 U.S.C. § 271(a), which specifies that whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States … infringes the patent. For direct infringement, one or more claims of the patent must read on the accused device. A claim reads on the accused device only if each and every limitation set forth in a claim appears in an accused

8

product." Heidary v. Amazon.com, Inc., No. 2024-1580, 2024 WL 4489918 at *3 (Fed. Cir. Oct. 15, 2024). The Court of Appeals held that the complaint in Heidary was insufficient because it "does nothing more than list what [the plaintiff] contends are the limitations of his claim 1 and assert that [the defendant] makes, sells, uses, offers to sell, or imports in the United States products that meet each and every limitation of claim 1. This is insufficient to state a plausible claim of patent infringement." 2024 WL 4489918 at *4; see also House v. Gen. Elec. Co., No. 23-CV-00071, 2024 WL 4350665 at *4(E.D.N.Y. Sept. 30, 2024) (holding that a complaint that merely recites each step laid out in the patent fails to support a plausible claim of infringement).

In this case, the FAC presents the infringement claim through a claim chart comparing Claim 1 of the '839 patent with features of the Plenti Program. FAC, Ex. C, at 50–57. However, Loyal-T only provides factual support for four of the seventeen elements of Claim 1,[5] while reciting the claim language for the remaining thirteen elements and stating "upon information and belief" that the Plenti Program met each of those elements. Id. The four supported elements relate solely to the first of the

---

[5] These elements are (1) "a method for providing a loyalty program comprising:", (2) "registering a customer with the loyalty program," (3) "said registration including obtaining personal information from the consumer," and (4) "wherein the token is associated with a form of tender." Id.

9

five steps disclosed in the patent, that is, the registration of customers into the loyalty program. See id., Ex. A, at 30, col. 2, ll. 44-62. This leaves the defendants without notice of how the Plenti Program satisfied the majority of limitations in Claim 1, including the patent's core inventive concept — loyalty programs "piggy-backing" on an existing association network.[6] See FAC ¶ 16. Accordingly, the FAC does not articulate a plausible claim that the Plenti Program infringed Claim 1 of the '839 patent.[7]

Loyal-T argues that the absence of information about the defendants' internal systems accounts for the deficiencies in its complaint and requests discovery on that basis. See Opp'n. Mem. 19-20. However, no discovery is appropriate at this stage, because the purpose of a motion to dismiss is to determine whether the complaint itself is sufficient to warrant discovery. See Iqbal, 556 U.S. at 678-79 ("Rule 8 … does not unlock the doors of discovery for plaintiff armed with nothing more than

---

[6] On the contrary, Amex represents that the Plenti Program used "Application Programming Interface" instead of a credit card or association network to transmit messages. Def's Mot. 11.

[7] Loyal-T takes a "kitchen-sink" approach and contends that their exhibits show that the Plenti Program infringed the rest of the elements in Claim 1. Mem. in Opp'n. to Defs.' Mot. to Dismiss ("Opp'n. Mem."), ECF. No. 63, 14-15. However, because Loyal-T fails to connect specifically the elements in Claim 1 and the features of the Plenti Program, Loyal-T has failed to state a plausible infringement claim. See Heidary, No. 2024-1580, 2024 WL 4489918 at *4 (Fed. Cir. Oct. 15, 2024) (granting a motion to dismiss because of the "apparent disconnect" between the patent and the accused product); see also Bot M8, 4 F.4th at 1354 (Fed. Cir. 2021) (holding that allegations through a "kitchen-sink" approach reveals inconsistency that is fatal to its infringement case).

conclusions."); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management'.").

The motion to dismiss the infringement claims relating to the Plenti Program in Counts III and IV is **granted**.

### IV. The Membership Rewards Program

Loyal-T pleads that the defendants' Membership Rewards Program infringes Claims 1 and 11 of the '537 patent (Counts I and II) and Claim 1 of the '839 patent (Counts III and IV).

At the motion-to-dismiss stage, a district court may construe the scope of claims "based on intrinsic evidence alone … in ruling on a motion under Rule 12(b)(6)." UTTO Inc. v. Metrotech Corp., 119 F.4th 984, 993 (Fed. Cir. 2024). The intrinsic evidence includes the patent claims, specification, and the patent's prosecution history. Teva Pharms. USA, Inc. v. Sandoz, Inc., 574 U.S. 318, 331 (2015). In the case where the claim language has a "clear and well-defined meaning," that meaning defines the scope of the claim. Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998). When "the factual allegations are actually inconsistent with and contradict" the scope of the claim, "they are likewise

11

insufficient to state a plausible claim." Bot M8, 4 F.4th at 1354 (Fed. Cir. 2021).

### A. Claim 1 of the '537 Patent

In Counts I and II, Loyal-T asserts that the defendants' Membership Rewards Program infringes Claim 1 of the '537 patent literally or under the doctrine of equivalents. FAC ¶¶ 72, 88. However, this argument fails because the claim language expressly disavows the scope that covers the defendants' Membership Rewards Program.

Claim 1 of the '537 patent provides that "the loyalty card does not provide tender for payment for a corresponding transaction, and wherein the loyalty card is separate and apart from a payment card used to provide payment for the corresponding transaction." FAC, Ex. B, at 46, col. 10, ll. 56-60. However, the FAC and plaintiff's response brief admit that an Amex credit card functions both as a loyalty card and a payment card. See FAC, Ex. D, at 79-81 (showing that the Amex credit card is both used for identifying the customer in the loyalty program and paying for the transaction); Opp'n. Mem. 18 ("AMEX credit cards are used as a loyalty card" and "the AMEX credit card is used as a payment card").

Because the language in Claim 1 of the '537 patent explicitly excludes an arrangement where the loyalty card is also the payment card, the plain meaning of this clear and well-

defined disavowal defines the scope of the claim. Because Loyal-T admits that, in the Membership Rewards Program, the loyalty card and the payment card are the same card, namely, the Amex credit card, Loyal-T's factual allegations are inconsistent with and contradict the scope of the patent. Therefore, the FAC does not plausibly allege a literal infringement of Claim 1 of the '537.

Loyal-T's effort to assert that the Membership Rewards Program infringes Claim 1 of the '537 patent under the doctrine of equivalents also fails. "[T]he doctrine of equivalents cannot be employed in a manner that wholly vitiates a claim limitation." SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1346 (Fed. Cir. 2001). For example, "if a patent states that the claimed device must be 'non-metallic,' the patentee cannot assert the patent against a metallic device on the ground that a metallic device is equivalent to a non-metallic device." Id. at 1347. Similarly, when Claim 1 states that the loyalty card and the payment card must be separate, the patentee cannot assert an arrangement where the loyalty card and the payment card are not separate to be equivalent for purposes of Claim 1.

Accordingly, because of the clear and well-defined disavowal of scope in Claim 1 of the '537 patent, Loyal-T fails to assert plausibly that the defendants' Membership Rewards

13

Program infringes Claim 1 of the '537 patent literally or under the doctrine of equivalents.

**B. Claim 11 of the '537 patent and Claim 1 of the '839 patent**

In Counts I and II, Loyal-T asserts that the defendants' Membership Rewards Program infringes Claim 11 of the '537 patent, FAC ¶¶ 72, 88, and, in Counts III and IV, Loyal-T asserts that the defendants' Membership Rewards Program infringes Claim 1 of the '839 patent, FAC ¶¶ 104, 120, literally or under the doctrine of equivalents.

Unlike Claim 1 of the '537 patent, neither Claim 11 of the '537 patent nor Claim 1 of the '839 patent expressly disavows the possibility that a loyalty card could also serve as a payment card. Nevertheless, both claims provide that "the token cannot be used as tender." See FAC, Ex. B, at 47, col. 12, ll. 18-19 (Claim 11 of the '537 patent); FAC, Ex. A, at 34, col. 10, ll. 43-45, 49-50 (Claim 1 of the '839 patent). The defendants contend that because the FAC shows that an Amex credit card serves as both the token and tender in the Membership Rewards Program, the program cannot infringe Claim 11 of the '537 patent or Claim 1 of the '839 patent, which explicitly eliminates that scope. See Defs.' Mot. 8 n.10, 18 (citing FAC, Ex. Q, at 178-79; FAC, Ex. D, at 84-85 ("the Membership Rewards Program necessarily requires the Amex card to be used as a form of tender.")).

14

In response, Loyal-T contends that the defendants' argument erroneously conflates the concepts of "card" and "token." Opp'n. Mem. 11. However, the claims and the specifications in both patents support the defendants' construction. And indeed, the plaintiff points to no other elements of the defendants' Membership Rewards Program that qualify as a "token" other than the Amex credit card.

Claim 11 of the '537 patent expressly defines a "token" as "at least one of an ID number or a credit card number." FAC, Ex. B, at 47, col. 12, ll. 26–29. While this definition does not equate a "token" with a physical card, the definition of "token" encompasses a credit card number. The specification adds that "[t]he token may be in the form of a card that is associated with a 16 digit code," indicating that a "token" can also be embodied in a physical card bearing an identifying code. Id. at 44, col. 5, ll. 8–9; see also id. at 42, col. 1, ll. 40–44 (listing a card as one example of a token).

Similarly, the specification of the '839 patent defines a "token" as "any element (either physical or virtual) that allows a customer to identify themselves using elements recognized by Association Networks." FAC, Ex. A, at 31, col. 4, ll. 51–54. It further states that "the token may be in the form of a card that is associated with a 16 digit code." Id., Ex. A, at 31, col. 4, ll. 54–56. In this way, the '839 patent echoes the definition of

15

"token" in the '537 patent, recognizing a credit card with an identifying code as one embodiment of a token. See also id., Ex. A, at 30, col. 1, ll. 29-31 (listing a card as an example of a token). Accordingly, both patents confirm that a credit card or a credit card number can be a token in the systems disclosed.

Loyal-T contends that even if the Amex credit card qualifies as a token, its function as a token represents only one aspect of the card and does not temporally overlap with its function as tender. See Opp'n. Mem. 11 n.4 ("The key is that the 'card' is *first* used not as tender but to determine the points available … and *then*, with other information, [is used] as tender." (emphasis added)). However, because the credit card *is* the token, it does not cease to be a token when used for payment. If such a temporal separation of function — first as a token, then as a tender — were true, a token and a tender would never overlap because a card could perform only one function at a time. This separation would render superfluous the limitation — "the token cannot be used as tender." A court should avoid an interpretation that makes a claim limitation superfluous. Bicon, Inc. v. Straumann Co., 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim."); Merck & Co. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is

preferred over one that does not do so."). Therefore, because Loyal-T's argument that the Amex credit card functions separately as a token or tender would render one claim limitation superfluous, this argument is unpersuasive.

Moreover, the patent prosecution history supports the claim construction that precludes infringement. "[A]ll express representations made by or on behalf of the applicant to the examiner to induce a patent grant, … includ[ing] amendments to the claims and arguments made to convince the examiner that the claimed invention meets the statutory requirements of novelty, utility, and nonobviousness … limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985).

In the prosecution history of the '839 patent,[8] the USPTO issued a Non-Final Rejection, rejecting Claim 1 under 35 U.S.C. § 103 in view of U.S. Patent Publication Nos. 2003/0009393 ("Norris"), 2012/0029996 ("Lang"), and 2008/0033793 ("Roberts"). See Non-Final Rejection, U.S. Pat. App. No. 12/782,442, at 6–10

---

[8] See Kaplan, Inc. v. Yun, 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014) ("When presented with a motion to dismiss pursuant to Rule 12(b)(6), … the Court may take judicial notice of official records of the United States Patent and Trademark Office (PTO).").

17

(U.S. Patent & Trademark Office Oct. 17, 2012) (file history of U.S. Patent No. 8,712,839).

In response, the applicant added the limitation that "the token cannot be used as tender" to traverse the obviousness rejection. See Applicant Argument/Remarks Made in an Amendment, U.S. Pat. App. No. 12/782,442, at 7-9 (U.S. Patent & Trademark Office Feb. 5, 2013) (file history of U.S. Patent No. 8,712,839). The applicant distinguished Norris and Lang by explaining that, in Norris and Lang, "the credit card must be used as tender for this method to work." Id. at 7. The applicant argued that because Norris and Lang do not teach the added limitation that "the token cannot be used as tender," the application was not obvious in light of those references. Id. at 8.

Accordingly, this prosecution history of the '839 patent disavows that the credit card, as the token, can also serve as tender because the patent application would have otherwise been preempted by prior art. This clear disavowal supports the defendants' position that the '839 patent expressly excludes the Membership Rewards Program, where the credit card is used as both the token and tender.

"When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal

18

force to subsequently issued patents that contain the same claim limitation." Biovail Corp. Int'l v. Andrx Pharms., Inc., 239 F.3d 1297, 1301 (Fed. Cir. 2001). Because the '537 patent results from a continuation application of the '839 patent,[9] the clear disavowal from the '839 patent's prosecution history applies to Claim 11 of the '537 patent that contains the same limitation — "the token cannot be used as tender."[10]

In sum, the claim language, specification, and prosecution history support the conclusion that the defendants' Membership Rewards Program does not infringe Claims 11 of the '537 patent or Claim 1 of the '839 patent because the clear disavowal in the claims precludes — contrary to fact — the Amex credit card from being used both as the token and tender. Because the plaintiff has also failed to allege adequately that Claim 1 of the '537 patent was infringed because it requires — contrary to fact — that the loyalty card be separate from the payment card, the

---

[9] U.S. Patent Application No. 2016/0110708 (filed Dec. 22, 2015) (file history of U.S. Patent No. 10,210,537).

[10] The patent prosecution history of the '839 patent also prevents Loyal-T from relying on the doctrine of equivalents to reclaim the scope that it had once disclaimed. See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 733-34 (2002) ("When … the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent."). Therefore, Loyal-T cannot establish that the defendants' Membership Rewards Program infringes Claim 1 of the '839 patent or Claim 11 of the '537 patent under the doctrine of equivalents, because the patent prosecution history of the '839 patent precludes Loyal-T from reclaiming the scope that a credit card can be both the token and tender, and when in fact the Amex credit card is so used.

motion to dismiss with respect to the Membership Rewards Program infringing Claims 1 and 11 of the '537 patent (Counts I and II) and Claim 1 of the '839 patent (Counts III and IV) is therefore **granted**.

## V. CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss the First Amended Complaint is **granted without prejudice** to the plaintiff's ability to file an amended complaint within 21 days. If an amended complaint is not filed within 21 days, the dismissal will be with prejudice.

The Clerk is directed to close all pending motions.

SO ORDERED.
Dated:    New York, New York
          September 18, 2025

_____
John G. Koeltl
**United States District Judge**