**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LOYAL-T SYSTEMS LLC, | |
| *Plaintiff,* | **Case No. 1:24-cv-07506-JGK** |
| v. | **JURY TRIAL DEMANDED** |
| AMERICAN EXPRESS COMPANY, and AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., | |
| *Defendants.* | |

**AMEX'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM FOR RELIEF**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................2

I.    The SAC Again Fails to Plausibly Allege Infringement by Membership Rewards..............................................................................................................2

        A.    Loyal-T Fails to Refute the Application of the Law of the Case Doctrine.......................................................................................................2

        B.    Loyal-T's Litigation-Induced Claim Construction is Divorced From the Claims, the Specification, and the Prosecution History.........................3

        C.    The Prosecution History Presents a Clear Disavowal of Loyal-T's Construction and Eliminates Infringement by Equivalents .........................5

II.    The SAC Again Fails to Plausibly Allege That Plenti Included the Asserted Patents' "Core Inventive Concept"..............................................................................6

III.    Loyal-T's Doctrine of Equivalents Argument Fails .................................................9

CONCLUSION.....................................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adnexus Inc. v. Meta Platforms, Inc.*,
    160 F. 4th 1216 (Fed. Cir. 2025) ................................................................................4

*AK Meeting IP, LLC v. Epic Games, Inc.*,
    2025 WL 1865953 (S.D.N.Y. July 7, 2025) ................................................................5

*Amgen Inc. v. Coherus Biosciences Inc.*,
    931 F.3d 1154 (Fed. Cir. 2019)...................................................................................9

*Azurity Pharms., Inc. v. Alkem Labs. Ltd.*,
    13 F. 4th 1359 (Fed. Cir. 2025) ..................................................................................6

*Banco San Juan Internacional, Inc. v. Fed. Rsrv. Bank of New York*,
    23-cv-6414 (JGK), 2025 WL 753768 (S.D.N.Y. Mar. 9, 2025)...................................3

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F. 4th 1342 (Fed. Cir. 2021) ....................................................................................8

*Cumberland Pharms. Inc. v. Sagent Agila LLC*,
    2013 WL 5913742 (D. Del. Nov. 1, 2013) ..................................................................9

*Ekchian v. Home Depot, Inc.*,
    104 F.3d 1299 (Fed. Cir. 1997)...................................................................................6

*Main St. Legal Servs., Inc. v. National Sec. Council*,
    811 F.3d 542 (2d Cir. 2016)........................................................................................8

*Network Apps, LLC v. AT&T Mobility LLC*,
    778 F. Supp. 3d 610 (S.D.N.Y. 2025)..........................................................................2

*Ottah v. Fiat Chrysler*,
    884 F.3d 1135 (Fed. Cir. 2018)...................................................................................9

*Pemberton v. Jack in the Box Inc.*,
    2026 WL 92047 (S.D. Cal. Jan. 13, 2026)...............................................................4, 5

*Richardson v. Adobe, Inc.*,
    2024 WL 4135347 (S.D.N.Y. Sept. 10, 2024).............................................................8

*SpeedTrack, Inc. v. Amazon.com*,
    998 F.3d 1373 (Fed. Cir. 2021)...................................................................................6

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*UTTO Inc. v. Metrotech Corp.*,
  119 F. 4th 984 (Fed. Cir. 2024) ..................................................................................4

*Wenger Mfg., Inc. v. Coating Machinery Sys., Inc.*,
  239 F.3d 1225 (Fed. Cir. 2001)...................................................................................5

*Weslowski v. Zugibe*,
  96 F. Supp. 3d 308 (S.D.N.Y. 2015)...........................................................................3

**Other Authorities**

FRCP 12(b)(6) ...............................................................................................................4, 6

**INTRODUCTION**

Defendants American Express Company and American Express Travel Related Services Company, Inc. (together, "Amex") set forth three straightforward reasons why the Second Amended Complaint ("SAC") should be dismissed with prejudice. None are squarely addressed by plaintiff Loyal-T Systems LLC's ("Loyal-T") opposition.

First, Amex explained why the SAC's infringement allegations against Amex's Membership Rewards program are precluded by the law of the case doctrine. Loyal-T's opposition suggests that this doctrine does not apply because the SAC includes "new factual allegations." Dkt. No. 88 at 12. But Loyal-T does not actually identify any pertinent "new facts." Loyal-T does, however, acknowledge that the Court's prior Opinion "effectively resolved [the infringement] question against Loyal-T" by interpreting the claim limitations requiring that "the token 'cannot be used as tender'" as "precluding any scenario in which a single card is both token and tender for the same transaction." *Id.* at 13. Nothing in the SAC justifies departing from the Court's prior opinion, because Loyal-T cannot change the fact that Membership Rewards uses a single credit card—the only fact that matters here.

Second, Loyal-T argues the Court's Opinion is based on a claim construction that is premature and incorrect. Both arguments are wrong as a matter of law. The Federal Circuit has repeatedly held that it is appropriate to interpret the plain language of the claims—and reject implausible interpretations—on a motion-to-dismiss. And, contrary to Loyal-T's argument, even if applicable, the doctrine of claim differentiation cannot supplant the plain language of the claims, the specification, and a clear disavowal made during prosecution. As such, the Court correctly held that "the claim language, specification, and prosecution history support the conclusion that the defendants' Membership Rewards Program does not infringe." Dkt. No. 74 at 19.

Loyal-T's claims of infringement by Amex's Plenti program fail because Loyal-T pleads no facts plausibly alleging that Plenti included the core inventive concept of "piggy-backing" loyalty data onto standard messages in an association network *to initiate* a rewards transaction. While the SAC includes additional, generic information, that "new" information (like the old information) merely shows that Plenti was a loyalty program.  There are no facts that plausibly suggest Plenti: (i) initiated a rewards transaction by first accessing an association network, or (ii) determined that the Plenti card "cannot be used as tender," which are the "core inventive concept[s]" required by the claims.  *See* Dkt. No. 74 at 10.

Accordingly, the Court should again grant Amex's motion, and dismiss the entirety of the SAC with prejudice.

## ARGUMENT

### I.    The SAC Again Fails to Plausibly Allege Infringement by Membership Rewards

Loyal-T's opposition reads like a motion for reconsideration.  Indeed, Loyal-T addresses the law of the case only in passing while devoting most of its brief to arguing why the Court's prior Opinion is wrong.  But the Court's well-reasoned Opinion is correct, and the law of the case applies.  Either provides an independent ground to dismiss the SAC.

### A.    Loyal-T Fails to Refute the Application of the Law of the Case Doctrine

The law of the case doctrine is clear: parties are foreclosed from "re-litigation of issues expressly or impliedly decided by the court." *Network Apps, LLC v. AT&T Mobility LLC*, 778 F. Supp. 3d 610, 619-20 (S.D.N.Y. 2025) (internal quotations omitted).  Indeed, courts are "loathe" to revisit prior decisions absent "extraordinary circumstances." *Id*.  Loyal-T seeks to do precisely that.  Indeed, while it admits that the Court's "prior reasoning effectively resolved [infringement] against Loyal-T," Loyal-T argues the Court's determination that the token must be separate from the payment card was "premised on an incorrect assumption," namely that "the card was the

2

token." Dkt. No. 88 at 13-14. This argument, a disguised request for reconsideration of an issue already decided, is not a basis to depart from the law of the case.[1] *Banco San Juan Internacional, Inc. v. Fed. Rsrv. Bank of New York*, 23-cv-6414 (JGK), 2025 WL 753768, at *2 (S.D.N.Y. Mar. 9, 2025) (law of the case applies absent "compelling reasons").

This Court has already considered and rejected the argument that a single card can be a non-tender token and tender at different times. "If such a temporal separation of function – first as a token, then as a tender – were true, a token and a tender would never overlap because a card could perform only one function at a time." Dkt. No. 74 at 16. Loyal-T seeks only to reargue the same "temporal separation" issue and does so without providing any intrinsic evidence for support. Nor can Loyal-T dispute the only fact that matters: Membership Rewards indisputably uses just one card. *See, e.g.,* Dkt. No. 58 at 63 ("[S]canning the AMEX card . . . transmit[s] a transaction request initiated by the token"); Sept. 11, 2025 Hr. Tr. at 18:19-19:15 (acknowledging the non-tender token and tender are the "same card"). An amended complaint is not a license to relitigate previously decided issues. *See Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y. 2015) ("The mere filing of an Amended Complaint does not entitle Plaintiff to relitigate his claims absent new factual allegations.").

### B.    Loyal-T's Litigation-Induced Claim Construction is Divorced From the Claims, the Specification, and the Prosecution History

Loyal-T attacks the Court's prior Opinion as being premised on an incorrect claim construction that was improperly adopted at the motion-to-dismiss stage. Dkt. No. 88 at 13-14. Those arguments are wrong as a matter of law.

---

[1] If Loyal-T took issue with the Court's prior decision, it should have appealed or moved for reconsideration, not filed a SAC under the same infringement theory.

First, it is entirely proper for a court to consider the plain meaning of claim terms on a motion-to-dismiss. "Where claims are construed based on intrinsic evidence alone, a decision on claim construction is not different in kind from the interpretation of other legal standards, which is **proper and routine** in ruling on a motion under Rule 12(b)(6)." *UTTO Inc. v. Metrotech Corp.*, 119 F. 4th 984, 993 (Fed. Cir. 2024) (emphasis added). Loyal-T's implication that a court may construe claims on a motion-to-dismiss only when the parties agree, Dkt. No. 88 at 17 n.3, is baseless. There is no "categorical rule against a district court's adoption of a claim construction in adjudicating a motion to dismiss." *Utto,* 119 F.4th at 992.

The Court correctly analyzed the express language of the claims and found that it clearly precluded infringement. Dkt. No. 74 at 14-16, 19. The Court then confirmed the claims' clear meaning by reviewing the specification and the prosecution history – each of which independently confirms that the claims do not cover a system using a single credit card.[2] *See, e.g. Pemberton v. Jack in the Box Inc.*, 2026 WL 92047, at \*6-9 (S.D. Cal. Jan. 13, 2026) (declining to "revisit or reconsider" the court's constructions on a motion-to-dismiss and confirming Plaintiff "cannot plausibly allege infringement . . . under the Court's claim construction").

Lacking any real criticism of the Court's analysis, Loyal-T argues that the "doctrine of claim differentiation" compels the Court to revisit its ruling. Dkt. No. 88 at 18. But "claim differentiation is not a 'hard and fast rule of construction,' and cannot be relied upon to 'broaden

---

[2] Loyal-T's citation to *Adnexus Inc. v. Meta Platforms, Inc.*, 160 F. 4th 1216 (Fed. Cir. 2025), is inapposite. The court specifically stated that "various portions of the specification . . . arguably support [the parties] preferred interpretations." *Id*. at 1222. Nothing in the specification supports Loyal-T's "interpretation."

claims beyond their correct scope.'"  *Wenger Mfg., Inc. v. Coating Machinery Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) (internal citations omitted).  While the "separate and apart" language from claim 1 of the '537 Patent is not included in the remaining asserted claims, the asserted claims expressly require that the claimed token "cannot be used as tender."  The intrinsic record is clear:

> [T]he claim language, specification, and prosecution history support the conclusion that the defendants' Membership Rewards Program does not infringe [the asserted claims] because the clear disavowal in the claims precludes — contrary to fact — the Amex credit card from being used both as the token and tender.

Dkt. No. 74 at 19.

Tellingly, Loyal-T does not point out why the Court's reliance on the claims, the specification, or the prosecution history is misplaced.  In view of the express, undisputed intrinsic evidence, Loyal-T's unsupported construction is not only implausible, but legally incorrect.  *See AK Meeting IP, LLC v. Epic Games, Inc.*, 2025 WL 1865953, at *5 (S.D.N.Y. July 7, 2025) ("[T]he Court may dismiss a complaint … when the complaint rests on an implausible claim construction." (internal citations omitted)); *Pemberton*, 2026 WL 92047 at *6 ("[T]he Court need not accept as true any of the claim construction allegations contained in the Second Amended Complaint.").

### C.    The Prosecution History Presents a Clear Disavowal of Loyal-T's Construction and Eliminates Infringement by Equivalents

Loyal-T also disputes the Court's holding that the prosecution history of the '839 Patent "disavows that the credit card, as the token, can also serve as tender because the patent application would have otherwise been preempted by prior art."  Dkt. No. 74 at 17-19.  In doing so, Loyal-T does not cite any intrinsic evidence, let alone the prosecution history, to support its position. Instead, Loyal-T speculates about the potential repercussions of its disavowal ("then any credit card-based loyalty system . . . would be categorically exempt") and raises its own subjective intent (never "intended to create such" waiver).  Dkt. No. 88 at 19.  These musings, however, do not

change the fact that Loyal-T disclaimed systems in which a single card provides both the token and tender to obtain allowance. "[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims **do not cover**, he is by implication surrendering such protection." *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) (emphasis added). Here, Loyal-T amended the claims to require that the "token cannot be used as tender," and distinguished the cited prior art on the basis that "the credit card must be used as tender for this [prior art] method to work." Dkt. No. 87 at 19. Having distinguished the prior art on this basis, Loyal-T is not entitled to recapture that claim scope. *See Azurity Pharms., Inc. v. Alkem Labs. Ltd.*, 13 F. 4th 1359, 1366-67 (Fed. Cir. 2025); *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1379-80 (Fed. Cir. 2021). The Court properly determined that the "prosecution history of the '839 patent disavows that a credit card, as the token, can also serve as tender because the patent application would have otherwise been preempted by prior art," Dkt. No. 74 at 18, and Loyal-T provides no sound reason to revisit that holding.

## II.    The SAC Again Fails to Plausibly Allege That Plenti Included the Asserted Patents' "Core Inventive Concept"

In its motion, Amex demonstrated that while Loyal-T filled in the blanks in its claim charts, it did so only with information showing that Plenti was a generic loyalty rewards system. This "new" information is devoid of any facts that plausibly show Plenti practices the core inventive concepts of the claims, namely that an initial transmission used an association network to gain access to a reward network by eliciting a determination the initiating instrument "cannot be used as tender." Dkt. No. 87 at 20-23.

Because it has no answer to this dispositive point, Loyal-T instead criticizes Amex for noting that "Plenti 'used an internet-based private rewards network,'" which it claims is "inappropriate for resolution on a Rule 12(b)(6) motion." Dkt. No. 88 at 21. Loyal-T misses (or

ignores) the basis for Amex's motion: the SAC fails to state a claim because it does not plausibly allege that Plenti included the core "piggy-backing" inventive concepts of the Asserted Patents. Amex has merely provided an explanation as to why they are not pled: because they do not exist.

For example, the SAC alleges that "a participant can use [the Plenti Program] at 'checkout'" by scanning the "magnetic strip" or "bar code" on a Plenti card, which it characterizes as "suggesting the use of an association network." Dkt. No. 76 ¶ 117.iv. But the Asserted Patents admit that prior-art loyalty programs—which did not use the purportedly novel "association network"—also allowed users to earn points by "physically scanning a card" at a "point of sale (POS) terminal." '839 Patent, 1:27-32. Thus, scanning the magnetic strip or bar code of a card does not plausibly suggest the system uses an association network to "piggy-back" loyalty card data. And the SAC confirms that the Plenti card is *not* a credit card, further rejecting the plausibility of Loyal-T's assertion that Plenti used an association network at any time. Dkt. No. 76-2 at 33 ("Plenti is not itself a credit card.").

Moreover, the SAC reproduces images showing a Plenti terminal displaying the Plenti logo and a receipt noting that the purchaser had accrued Plenti points:

 

Dkt. No. 76-2 at 43-44. But this evidence of a terminal specifically customized to display Plenti

7

messages and print Plenti receipts points away from (not towards) infringement.  The specification criticizes prior-art loyalty programs that required "unique hardware or software [to] be installed at the merchant's point of sale" (like the Plenti terminal above) because they involved "high costs" that "present[ed] a difficult obstacle for many merchants."  '839 Patent, 1:50-2:2.  In other words, Loyal-T's own evidence confirms Plenti utilized customized hardware and/or software capable of transmitting loyalty-program messages over a separate network, not a standard POS terminal that "piggy-backs" loyalty-program information on a preexisting association network.  *See, e.g. Richardson v. Adobe, Inc.*, 2024 WL 4135347, at \*9 (S.D.N.Y. Sept. 10, 2024) (dismissing complaint that "has not alleged how Adobe's product constitutes an electronic message").

Loyal-T alleges that the SAC is not "too vague or conclusory" because Amex can "engage with the SAC's claim charts and technical allegations."  Dkt. No. 88 at 23.  But that is not the standard.  To state a plausible claim, the SAC must provide "factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F. 4th 1342, 1353 (Fed. Cir. 2021).  The SAC does not meet the correct standard because the facts pled are either immaterial or point away from Plenti "piggy-backing" loyalty points over an association network.

Finally, Loyal-T attempts to excuse its failure to state a plausible claim by alleging that "Amex has complete control of the software and code" for Plenti, such that "discovery should be granted" if "the Court concludes that Loyal-T's SAC is deficient."  Dkt. No. 88 at 24, 27.  This argument puts the cart before the horse.  "A plaintiff who has failed adequately to state a claim is not entitled to discovery."  *Main St. Legal Servs., Inc. v. National Sec. Council*, 811 F.3d 542, 567 (2d Cir. 2016).

### III.    Loyal-T's Doctrine of Equivalents Argument Fails

Loyal-T argues that it "has pled its infringement claims broadly enough to encompass . . . infringement under the doctrine of equivalents." Dkt. No. 88 at 26. Loyal-T argues that even if "an Amex credit card as the customer identifier differs from certain illustrative examples in the patents, the distinction is legally incorrect, and at the very least, insubstantial." *Id*. Loyal-T ignores this Court's opinion, which cites controlling Supreme Court precedent that prevents Loyal-T from relying on the doctrine of equivalents:

> The patent prosecution history of the '839 patent also prevents Loyal-T from relying on the doctrine of equivalents to reclaim the scope that it had once disclaimed. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002) . . . Therefore, Loyal-T cannot establish that the defendants' Membership Rewards Program infringes Claim 1 of the '839 patent or Claim 11 of the '537 patent under the doctrine of equivalents. . .

Dkt. No. 74 at 19 n.10. More specifically, as stated above, *supra* section I.C, Loyal-T distinguished prior-art systems where the token and tender were on the same card to obtain allowance. Loyal-T's argument under the doctrine of equivalents therefore fails as a matter of law and can be dismissed at the pleading stage. *See Amgen Inc. v. Coherus Biosciences Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019) (relying on prosecution history estoppel at the pleading stage to "bar[] Amgen from succeeding" on its DOE claim); *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018) (finding term "cannot plausibly be construed to include or be the equivalent of" the accused product "in view of the specification and the prosecution history"); *Cumberland Pharms. Inc. v. Sagent Agila LLC*, 2013 WL 5913742, at *3 (D. Del. Nov. 1, 2013) (granting motion-to-dismiss where finding of infringement under doctrine of equivalents would "vitiate" claim element).

### CONCLUSION

For the reasons stated above, Amex respectfully requests that the SAC be dismissed with prejudice.

9

Dated: February 9, 2026

Respectfully submitted,

*/s/ Lewis Popovski*

Lewis Popovski
Ryan J. Sheehan
George Soussou
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222
lpopovski@pbwt.com
rsheehan@pbwt.com
gsoussou@pbwt.com

***Attorneys for Defendants American Express
Company and American Express Travel
Related Services Company, Inc.***

10

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing Memorandum of Law includes 2800 words (excluding cover page, certificate of compliance, table of contents, and table of authorities) and is otherwise in compliance with Paragraph II.D of this Court's Individual Practices.

<i>/s/ Lewis Popovski</i>
Lewis Popovski

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record for plaintiff who are deemed to have consented to electronic service are being served with a copy of this document via CM/ECF on February 9, 2026.

<i>/s/ Lewis Popovski</i>
Lewis Popovski

16226032