UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————

LOYAL-T SYSTEMS LLC,

                Plaintiff,

      - against -

AMERICAN EXPRESS COMPANY &
AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY INC.,

              Defendants.

————————————————————

24-cv-7506 (JGK)

<u>Memorandum
Opinion and Order</u>

**John G. Koeltl, District Judge:**

The plaintiff, Loyal-T Systems LLC ("Loyal-T"), brings this action against the defendants, American Express Company ("Amex") and American Express Travel Related Services Company, Inc. ("Amex Travel").

In the Second Amended Complaint ("SAC"), ECF No. 76, Loyal-T seeks damages and injunctive relief for alleged patent infringement pursuant to 35 U.S.C. § 271. The plaintiff claims that Amex's and Amex Travel's Plenti Program[1] practiced without authorization the methods and technology in United States Patent No. 8,712,839 (the " '839 Patent"), and that Amex's and Amex Travel's Membership Rewards Program[2] infringes the '839 Patent and United States Patent No. 10,210,537 (the " '537 Patent").

---

[1] Because the SAC does not distinguish between Amex's and Amex Travel's Plenti Programs or between their respective Membership Rewards Programs, each program is considered as one program for purpose of this Memorandum Opinion and Order.

[2] Loyal-T refers to the Plenti Program and the Membership Rewards Program collectively as the "Loyalty Points Program." <u>See</u> SAC ¶ 80. For clarity, this Memorandum Opinion and Order does not adopt that terminology.

The defendants move to dismiss the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the defendants' motion to dismiss is **granted with prejudice**.

## I.     Background

Unless otherwise noted, the following facts are taken from the SAC and are accepted as true for purposes of the motion to dismiss.[3]

### A. Patents

Loyal-T owns the '537 and '839 Patents, both directed to systems and methods for administering customer loyalty programs. SAC ¶¶ 18–19, 27–32. As described in the SAC, "a customer loyalty program is a system whereby a business offers rewards to its customers who make frequent purchases." Id. ¶ 14. Traditionally, administering such programs required "specialized hardware to process the loyalty point clearing and settlement process." Id. ¶ 17. The '537 and '839 Patents disclose an alternative process in which the loyalty program "piggy-back[s]" on an existing association network, thereby eliminating the need for separate hardware. Id. ¶¶ 18, 37–40.

In simple terms, Loyal-T's patents enable a system in which a merchant identifies a customer through a point-of-sale ("POS") device and transmits the customer's ID (or "token") over the association network to the Program Manager's system. Id. ¶ 40. After receiving the token, the Program Manager

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

will then determine in a separate system whether the token may be used to provide loyalty program offers and rewards. Id. ¶ 58. After the Program Manager's determination, the merchant receives a message via a communication network indicating the results. Id. ¶ 59. Loyal-T represents that this communication network is separate and distinct from the association network where the token is transmitted to the Program Manager in the first place. Id.

Loyal-T alleges that one example of a token is a primary account number ("PAN"), commonly referred to as the card number, which consists of 12 to 19 digits. Id. ¶¶ 20, 40. In the systems claimed by the '537 and '839 Patents, the tokens cannot be used as a form of payment, or "tender," for the transaction. Id. ¶ 40. Loyal-T alleges that this distinction between token and tender allows the loyalty transaction to bypass data-security protocols specific to payment cards and to avoid the risks associated with a data breach. Id.

Specifically, the SAC focuses on two asserted patent claims: Claim 1 in the '839 Patent and Claim 11 in the '537 Patent. Claim 1 of the '839 Patent claims:

> [a] method for providing a loyalty program comprising:
>
> registering a consumer with the loyalty program, said registration including obtaining personal information from the consumer and associating with the consumer a token to initiate a transaction request over an association network when used in conjunction with a merchant transaction system, wherein the token is associated with a form of tender;

receiving by a processor the transaction request initiated by the token from the merchant transaction system, said transaction request, containing information sufficient to identify the token and a transaction, wherein the transaction request is transmitted over the association network;

determining, by the processor, that <u>the token cannot be used as tender to pay for the transaction</u> and then determining whether the consumer is entitled to any rewards from the loyalty program in response to receiving the transaction request initiated by the token;

transmitting by the processor, via the association network a message to the merchant transaction system, indicating any applicable rewards and indicating that <u>the token cannot be used as tender</u> in response to the receiving the transaction request initiated by the token;

receiving, by the processor, from the merchant transaction system, additional details of the transaction stored at the merchant transaction system, during or after completion of the transaction tied to <u>the token that cannot be used as tender</u>, wherein the additional details of the transaction are transmitted over a communications network separate and distinct from the association network;

matching, by the processor, the information in the transaction request to the additional details of the transaction;

and

transmitting any additional rewards to the consumer in response to the matching of the information in the transaction request to the additional details of the transaction.

SAC, Ex. A (the "'839 Patent") 10, ECF No. 76-2 (emphasis added). Claim 11 of the '537 Patent claims:

[a] computer implemented method for providing a loyalty program, comprising:

receiving, by a point of sale (POS) terminal of a merchant transaction system, a token that allows a consumer to identify themselves using predefined elements, wherein the receipt of the token by the POS terminal is facilitated by physical scanning of a loyalty card;

transmitting, by the POS terminal of the merchant transaction system, a transaction request message for a sales transaction, wherein the transaction request message is transmitted over a credit card association network;

receiving, by a loyalty program processor, the corresponding transaction request message initiated by the token from the merchant transaction system, wherein the transaction request message contains information sufficient to identify the token and the corresponding transaction, and wherein the token cannot be used as tender to pay for the corresponding transaction;

transmitting, by the loyalty program processor, a reward or other response message, to the POS terminal in response to receiving the transaction request message;

scanning, using the card scanner of the POS terminal, a payment card of the consumer to tender payment for the corresponding transaction;

wherein the token is at least one of an ID number or a credit card number, permits a consumer to identify themselves using predefined elements recognized by the credit card association network;

receiving, by the loyalty program processor, additional details of the corresponding transaction and matching the additional details of the corresponding transaction with the corresponding transaction request message so as to identify applicable rewards for the consumer, the additional details received over a communication network separate and distinct from the credit card association network; and

validating, by the loyalty program processor, the applicable rewards for the consumer in response to receiving the additional details of the corresponding transaction, to confirm that the consumer is not given undeserved reward for a corresponding transaction not completed.

SAC, Ex. B (the "'537 Patent") 11, ECF No. 76-2 (emphasis added).

## B. Alleged Infringement

Loyal-T alleges that the defendants introduced a multi-merchant loyalty program, also known as the Plenti Program, in 2015. SAC ¶¶ 62, 63. The Plenti Program allegedly "granted customers one point for every dollar spent at participating merchants." Id. ¶ 63.

Customers who enrolled in the Plenti Program allegedly used a plastic membership card with a magnetic strip, a phone number, or a special Plenti Amex card at a participating merchant's POS terminal to begin the transaction process. Id. ¶ 64. The POS terminal then communicated the customer information over the association network to the customer's loyalty account. Id. ¶ 67. The association network then provided the customer with the number of loyalty points available for redemption through a distinct communication network. Id. ¶ 68. At that point, the customer could redeem loyalty points for all or part of the transaction. Id. ¶ 69.

Loyal-T argues that the Plenti Program used an association network because the physical Plenti card used a 16-digit card number, whereas Amex PANs are 15 digits. Id. ¶ 75. Loyal-T also cites several Plenti Program webpages showing features such that the Plenti card has a magnetic strip or

can be used at checkout, which Loyal-T contends show that the Plenti Program used an association network. Id. ¶ 76.

Loyal-T alleges that the defendants terminated the Plenti Program in or around 2018 but preserved the Plenti Program's capabilities in the Membership Rewards Program that uses "Pay with Points." Id. ¶¶ 71, 78–80. Both Amex and Amex Travel incorporate the Membership Rewards Program as part of their features. Id. ¶¶ 78, 80. In the Membership Rewards Program, the "Pay with Points" capability allegedly allows customers to use their earned points to pay a portion of their Amex bill, redeem for service or merchandise at a participating merchant, or redeem for travel through Amex Travel. Id. ¶¶ 81–82. Loyal-T alleges that participating merchants of Amex's Membership Rewards Program include Expedia, Rite Aid, Amazon.com, Best Buy, Dell Technologies, Staples, Saks Fifth Avenue, and Grubhub. Id. ¶¶ 87, 89–91.

Loyal-T alleges that the defendants' Plenti Program used the invention in the '839 Patent without authorization, and that the Membership Rewards Program similarly uses the invention in the '537 and '839 Patents without authorization. Id. ¶¶ 116–20. Specifically, the SAC asserts that (1) the Plenti Program infringed Claim 1 of the '839 Patent (Counts III and IV), and (2) the Membership Rewards Program infringes Claim 11 of the '537 Patent (Counts I and II) and Claim 1 of the '839 Patent (Counts III and IV).

## C. Procedural History

Loyal-T filed the original complaint on May 15, 2023, and amended the complaint (the "FAC") on December 13, 2024. See ECF Nos. 1, 58. On January 15, 2025, the defendants moved to dismiss the FAC. See ECF No. 61. The Court granted the defendants' motion without prejudice in a Memorandum Opinion and Order dated September 18, 2025. See ECF No. 74; Loyal-T Sys. LLC v. Am. Express Co. ("Loyal-T I"), 800 F. Supp. 3d 580 (S.D.N.Y. 2025).

In Loyal-T I, the Court dismissed Loyal-T's claims that the Plenti Program infringed Claim 1 of the '839 Patent because the FAC "merely parrot[ed] the language of thirteen of the claim's seventeen elements without alleging how the Plenti Program infringed those claims." 800 F. Supp. 3d at 586. Specifically, the Court found that the FAC failed to allege how the Plenti Program satisfied "the majority of limitations in Claim 1," including the patent's core inventive concept: a loyalty program "piggy-backing" on an existing association network. Id. at 587.

The Court also dismissed the claims that the Membership Rewards Program infringed Claim 1 of the '537 Patent because that Claim expressly excludes an arrangement in which the loyalty card is also the payment card, whereas the Amex card is both a loyalty card and a payment card in the Membership Rewards Program. Id. at 588–89. Finally, the Court dismissed Loyal-T's infringement claims alleging that the Membership Rewards Program infringed Claim 11 of the '537 Patent and Claim 1 of the '839 Patent because both claims expressly disavow the possibility that the token can be used as

8

tender, whereas, in the Membership Rewards Program, the Amex card is used both as the token and the tender. Id. at 589–91.

On October 10, 2025, Loyal-T filed the SAC, dropping the claim that the Membership Rewards Program infringes Claim 1 of the '537 Patent while maintaining the remaining claims. See SAC 40–50.

On December 18, 2025, the defendants moved to dismiss the SAC. See ECF No. 85.

## II.    Legal Standards

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the facts alleged in the light most favorable to the plaintiff, "the tenet that a court must accept a complaint's

allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Id. at 663.

In a patent infringement case, a complaint must contain sufficient facts to provide the alleged infringer with "notice of what activity or device is being accused of infringement." K-Tech Telecomms., Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1284 (Fed. Cir. 2013). While a plaintiff need not prove its case at the pleading stage, "a plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1353 (Fed. Cir. 2021).

Finally, when presented with a motion to dismiss a complaint, the Court may consider documents attached to or referenced in the complaint, documents that the plaintiff either possessed or knew about and relied on in bringing the lawsuit, or matters of which judicial notice may be taken. See Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).

### III. The Plenti Program

In Loyal-T I, the Court dismissed the infringement claims against the Plenti Program because the FAC merely recited the elements of Claim 1 of the '839 Patent and alleged, "upon information and belief," that the Plenti Program contained these elements. 800 F. Supp. 3d at 586–88. The Court explained that

10

those allegations left the defendants without notice of how the Plenti Program satisfied "the majority of limitations in Claim 1," including the patent's core inventive concept: loyalty programs "piggy-backing" on an existing association network. Id. at 587.

The SAC attempts to cure that deficiency by adding a more detailed claim chart identifying the alleged correspondence between Claim 1 of the '839 Patent and features of the Plenti Program. See SAC ¶ 117. Loyal-T principally relies on two categories of allegations. First, Loyal-T alleges that the Plenti card used a 16-digit number, like Visa and Mastercard credit cards, instead of the 15-digit number used for Amex PANs. Id. ¶¶ 74–75, 117. Loyal-T alleges that the 16-digit Plenti card number suggests that the Plenti card could be recognized on other credit-card association networks and therefore "piggy-backed" on those networks. Id. ¶ 75. Second, Loyal-T relies on webpages stating that customers could use the Plenti Program at checkout, that the Plenti card users could earn points on purchases, and that the Plenti card had a magnetic strip, which Loyal-T contends imply the use of an association network. Id. ¶¶ 64–66, 117; SAC Exs. I, L, ECF No. 76-3.

However, as this Court explained in Loyal-T I, allegations that merely list the limitations of the claim and match them to features of the accused products are insufficient to state a claim. 800 F. Supp. 3d at 587 (citing Heidary v. Amazon.com, Inc., No. 2024-1580, 2024 WL 4489918 at *4 (Fed. Cir. Oct. 15, 2024)); see also AK Meeting IP, LLC v. Epic Games, Inc., No. 23-cv-8214, 2024 WL 4299686, at *7 (S.D.N.Y. Sep. 26, 2024) (dismissing an infringement claim

11

based on a conclusory correspondence between features of the accused product and elements of the asserted claim).

That defect remains: the SAC adds factual details about the Plenti Program and then makes conclusory assertions that those details correspond to the association-network limitation. But a 16-digit number, used at checkout, the ability to collect points on purchase, and a magnetic strip do not self-evidently show that the Plenti Program used or piggy-backed on an "association network" within the meaning of the '839 Patent. To the contrary, the exhibits appear to show a separate terminal at a checkout devoted to the Plenti Program, not some method to "piggy-back" on a separate association network. SAC, Ex. C at 19, ECF No. 76-2.

Without a plausible explanation of why those alleged features establish "piggy-backing" on an "association network" as defined in the '839 Patent, the SAC still relies on speculation and conclusory assertions, leaving the defendants without adequate notice of how the Plenti Program satisfied Claim 1 of the '839 Patent. See Loyal-T I, 800 F. Supp. 3d at 587 (citing K-Tech Telecomms., 714 F.3d at 1284).

Because the SAC does not cure the defect identified in Loyal-T I, the plaintiff has provided no basis to reach a different result. Therefore, Counts III and IV, to the extent they are based on the Plenti Program's alleged infringement of Claim 1 of the '839 Patent, are **dismissed with prejudice**.

12

## IV. The Membership Rewards Program

In Loyal-T I, the Court also dismissed the claims alleging that the Membership Rewards Program infringed Claims 1 and 11 of the '537 Patent and Claim 1 of the '839 Patent because the claim language, the specification, and the prosecution history show that the claims expressly exclude systems like the Amex card system, in which the card is both used as the token and the tender. Id. at 589–91.

In particular, the Court found that Claim 1 of the '537 Patent expressly excludes an arrangement in which the loyalty card is also the payment card, which Loyal-T admitted is the system used by the Membership Rewards Program. Id. at 588–89. That clear and well-defined disavowal precluded Loyal-T from asserting that the Membership Rewards Program infringes Claim 1 of the '537 Patent, either literally or under the doctrine of equivalents. Id. at 589 (citing SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1346 (Fed. Cir. 2001)). In the SAC, Loyal-T does not replead that the Membership Rewards Program infringes Claim 1 of the '537 Patent and therefore has abandoned that claim.

Moreover, in Loyal-T I, the Court also found that Claim 11 of the '537 Patent and Claim 1 of the '839 Patent both contain the limitation that "the token cannot be used as tender," and agreed with the defendants that the Membership Rewards Program contradicted that limitation because the Amex card serves as both the token and tender. Id. at 589. The Court rejected Loyal-T's protest that the card's function as a token represents only one aspect of the

13

Amex card and does not temporally overlap with its function as tender. Id. at 590. The Court explained that such a construction would render the limitation that "the token cannot be used as tender" superfluous: because a card could perform only one function at a time, under that construction, no token would ever be the tender. Id. Because the claim language, the specifications, and the prosecution history all supported the conclusion that Claim 11 of the '537 Patent and Claim 1 of the '839 Patent contemplate excluding systems in which the same card is used both as the token and as tender, the Court dismissed the infringement claims against the Membership Rewards Program based on Claim 11 of the '537 Patent and Claim 1 of the '839 Patent. Id. at 590–91.[4]

To cure the deficiency in Loyal-T's infringement claims under Claim 11 of the '537 Patent and Claim 1 of the '839 Patent, the SAC repeatedly argues that the Amex card is not itself the token. See, e.g., SAC ¶¶ 4, 25, 45, 47–50, 104, 110–13. Rather, Loyal-T alleges that the Amex card contains several elements, one of which—the card's PAN—is the token. See id.

This argument is a reprise of the argument the plaintiff raised in Loyal-T I, although in a different form. Compare SAC ¶¶ 4, 25, 45, 47–50, 104, 110–

---

[4] Loyal-T argues that it is improper for the district court to construe patent claims at the pleading stage. See Pl.'s Opp'n 17, ECF No. 88. That argument is incorrect where, as in this case, the construction rests on intrinsic evidence, including the claim language, the specification, and the prosecution history. See UTTO Inc. v. Metrotech Corp., 119 F.4th 984, 993 (Fed. Cir. 2024) ("Where claims are construed based on intrinsic evidence alone, a decision on claim construction is not different in kind from the interpretation of other legal standards, which is proper and routine in ruling on a motion under Rule 12(b)(6).").

13, with Pl.'s Opp'n Defs.' Mot. Dismiss FAC 15–18, ECF No. 63. In Loyal-T I, Loyal-T argued that the Amex card's function as a token did not overlap temporally with its function as tender. Pl.'s Opp'n Defs.' Mot. Dismiss FAC 11 n.4. The SAC now appears to abandon that temporal-separation theory and instead alleges that the Amex card can be divided into different components, one of which—the PAN or card number—is the token, while other components of the card function as tender. See, e.g., SAC ¶¶ 4, 25, 45, 47–50, 104, 110–13

But that reframing suffers from the same defect identified in Loyal-T I. If Loyal-T's theory were accepted—so that one component of the card could be labeled the "token" and another as "tender"—then the limitation that "the token cannot be used as tender" would have no meaningful work to do. A credit card with multiple functions could always be conceptually divided into separate components based on the different functions it performs, allowing the patentholder to circumvent the limitation by assigning different aspects of the same card to distinct functions. In other words, that construction would read the limitation out of the claims. A court should avoid an interpretation that makes a claim limitation superfluous. Bicon, Inc. v. Straumann Co., 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim."); Merck & Co. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."). Accordingly, there is no basis to alter the conclusion in Loyal-T I that the Amex

card is properly construed as both the token and as tender in the Membership Rewards System. See 800 F. Supp. 3d at 590.

Moreover, many of the SAC's own exhibits identify the Amex card, as a whole, as the item the merchant uses to initiate the transaction and identify the customer—namely, the "token." See, e.g., SAC Ex. E ("Card Member swipes Card at a POS terminal, enters Card information into online checkout form, or a card-on-file is retrieved from a merchant's Card vault."); Ex. G ("Determine whether the Card is associated with a Points program; Confirm the Card has sufficient Points to cover the needed payment."); Ex. O, at 3 ("Card Member begins checkout on the Merchant's site or app and pays with an eligible American Express Card."); Ex. T, at 3 ("Just use your Card for purchases, large or small, and watch the points add up.").[5] Those exhibits do not support Loyal-T's theory that the Amex card functions as a collection of separate components, with each relevant function assigned to a different component. To the contrary, they reinforce the conclusion that the Amex card itself is used both to identify the customer, that is, the "token," and to complete the payment transaction, that is, as "tender."

Because an Amex card is both the token and tender in the Membership Rewards Program, the accused system is "inconsistent with and contradict[s]

---

[5] Although the SAC also attaches exhibits from the "Amex Token Service" that identify the PAN as a "token" in that service, see SAC Exs. U, V, the SAC does not plead a clear connection between the Amex Token Service and the Membership Rewards Program, or show that the "token" in the Amex Token Service is the same "token" allegedly used in the Membership Rewards Program.

infringement" of Claim 11 of the '537 Patent and Claim 1 of the '839 Patent, both of which expressly exclude that arrangement. Bot M8, 4 F.4th at 1354. Accordingly, the SAC fails to state a claim, either literally or under the doctrine of equivalents, that the Membership Rewards Program infringes Claim 11 of the '537 Patent or Claim 1 of the '839 Patent.

Counts I through IV, to the extent they are based on the Membership Rewards Program's alleged infringement of Claim 11 of the '537 Patent or Claim 1 of the '839 Patent, are therefore **dismissed with prejudice.**

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not addressed specifically, those arguments are either moot or without merit.

For the foregoing reasons, Amex's motion to dismiss the SAC is **granted with prejudice.**

The Clerk is respectfully directed to close all open motions in this case and to enter a judgment against the plaintiff dismissing the SAC.

**SO ORDERED.**

Dated:  **New York, New York**
    **July 6, 2026**

             **John G. Koeltl**
           **United States District Judge**

17